JAMES P. AND JOHN G. NEWCOMB V. ELIZA NEWCOMB AND HEIRS OF J. C. HALL.

1. An order of the probate court made in 1849, setting aside to the widow $2000 "as an allowance secured to her by the Constitution of the State," for the benefit of herself and children, and permitting her to receive in part payment thereof the lots and buildings occupied as a homestead, was void for want of power in the court.
2. The widow acquired, under such an order, no title to property taken at the appraised value on the inventory to satisfy such an allowance.
3. Nor could third parties who were purchasers at a sale made to satisfy said allowance acquire any title by their purchase, though the sale was reported on and confirmed by the probate court.

ERROR from Bexar. Tried below before the Hon. George H. Noonan.

This suit was originally instituted by appellants, soon after attaining their majority, for the purpose of revising the action of the probate court regarding the land in controversy, which was claimed by the heirs of J. C. Hall.

The leading facts are: Thomas Newcomb, a widower

and father of the appellants, re-married in 1847, making Eliza —————— his second wife. She bore him two children; one died an infant before the father; the other, born after the father's death, died soon after. Thomas Newcomb died in the spring of 1849, in San Antonio.

His widow, Eliza Newcomb, administered; C. A. Harper was her attorney, and J. L. Hewitt, Harper's law partner, the chief justice of the county.

The probate record, incorporated in the statement of facts, shows the following:

The "McKnight title," No. 18 of the inventory, containing one quarter of a league in Goliad county, on the San Antonio river (the land in controversy), was appraised at $50. Harper, the attorney, was one of the appraisers.

August, 1849, Mrs. Newcomb, by Harper, her attorney, filed a petition that a guardian be appointed for the three children (her own child and the two plaintiffs), and that her allowed shares of the estate under the Constitution, and also her one year's maintenance and support, be set apart to her.

August 30, 1849, the court decreed that the sum of one thousand dollars, out of the proceeds of said estate, be appropriated and set apart for the yearly maintenance of said Eliza Newcomb, and the children of said Thomas Newcomb, and said administratrix.

November 28, 1849, the court decreed that the sum of two thousand dollars, secured to her by the Constitution, be set apart for the use and benefit of said widow and children, and that Mrs. Newcomb be permitted to receive in part payment of said allowance the lot or lots and buildings thereon, the "same being the residence of Thomas Newcomb."

January, 1850, the administratrix represented that a further sale of property was necessary to pay the main-

tenance of petitioner and her children; and reporting on the condition of the estate with reference to the year's maintenance and constitutional allowance, she reported to have taken from the inventory, at its appraised value, the following property:

| | | |
|---|---|---|
| House and lot marked No. 2 in inventory, and described as three lots in "La Villita" (homestead.................................... | $500 | 00 |
| A tract of land on the San Antonio river, known as the McKnight title, marked in inventory No. 18, and located upon by J. R: Tally..... | 50 | 00 |
| A piano and money received by sales........... | 316 | 50 |
| Being a total of............................. | $866 | 50 |

She then reported that she paid of said sum $607.78, leaving to her as paid on the allowances $258.72, claiming as still due her thereon $2741.28.

She then prayed, among other things, that there should be set apart to her all she had chosen from the inventory, as specified in the account current, and which had not been previously set apart to her, and that certain other lands be sold.

January 1, 1850, the court set aside to her the piano and the No. 18 tract of land on the San Antonio river, appraised at $50 (the land in controversy), and ordered a sale of other lands, the proceeds to be applied to her maintenance and constitutional allowance.

January 13, 1850, Mrs. Newcomb, through Harper, attorney, reported that she had sold the McKnight title, No. 18 of the inventory, at two hundred dollars; that she considered the sale necessary for her support; that it was the best sale she could make of it, and asked that the sale be approved.

February 1, 1850, the court decreed that said sale of No. 18 be approved.

No further action was had relative to the land in controversy.

The other leading facts are :

Thomas Newcomb having, in 1849, negotiated for a sale of the McKnight title land, No. 18 of the inventory, being one-fourth of a league, at $1.25 per acre, died without consummating the sale, Hall being in possession of the land.

September 18, 1849, Mrs. Newcomb, in consideration of fifty dollars, conveyed by deed the land No. 18, "having taken it from the inventory at its appraised value, as my separate property."

Said deed was acknowledged on January 18, 1850, before Judge Hewitt.

January 18, 1850, Harper, in consideration of $300, by quit-claim deed conveyed the same property to J. C. Hall, describing it as "being all the interest of said estate in said tract of land, the same having been chosen by said widow from the inventory at its appraised value, and set apart to her by order of the Probate Court of Bexar county as her separate property."

It further appeared that Tally, by agreement with Thomas Newcomb, was to get $300 for his location, the balance to be paid by Hall, partly in money, partly in a slave valued at $600. It appears that Harper, in his arrangements with Hall, had assumed to settle with Tally, and had paid him, except $75. Harper likewise took the slave valued at $600, and received the money.

It is left doubtful whether Mrs. Newcomb received anything; and if anything, whether $50 or $200.

It was shown by the probate record, and by other testimony, that there was a homestead in the Newcomb estate, the same being the property referred to in the order of November 28, 1849.

There was a verdict and judgment for defendant.

*W. B. Leigh*, for plaintiffs in error, contended that the constitutional allowance of two thousand dollars could not be made by the probate court for the benefit of the widow and children, in addition to the homestead occupied by them, and that the action of the court permitting the widow to take the homestead at its appraised value, in part payment of the allowance, was in palpable violation of Article 1177, Hartley's Digest. He also insisted that the order for the "constitutional allowance" was procured by a fraudulent combination, of which Hall had notice, and was used as a means of converting the estate into Mrs. Newcomb's individual property, in furtherance of a plan to make way with the property.

*Walton & Green, N. O. Green*, and *H. P. Brewster*, for defendants in error, insisted that the absence of an order making the "allowance in lieu of exempted articles," did not vitiate the setting aside of the McKnight land to the widow, and the approval of the selection after it was made by her ; citing Dancy v. Strickling, 15 Texas, 557; Baker v. Coe, 20 Texas 429; Poor v. Boyce, 12 Texas, 440; Alexander v. Maverick, 18 Texas, 179.

WALKER, J.—This was an action brought for the purpose of revising and setting aside certain orders and decrees of the Probate Court of Bexar county.

The writ of *certiorari* was resorted to.

The questions now to be disposed of grow out of the following facts : Thomas Newcomb, the father of the appellants, died of cholera at the city of San Antonio in 1849. Previous to his death he had made a contract with J. C. Hall, by which he sold and conveyed his interest in the land in controversy to Hall. The land was known as "the McKnight title to one-fourth of a league of land in Goliad county, on the San Antonio river," and in the inventory of Thomas Newcomb's estate is set down as "No.

18." Hall went into possession of the land under his contract with Thomas Newcomb. Whether that contract was in writing or not does not fully appear, nor do we deem it important in the decision of this case.

It appears that one Tally had a location upon the land prior to Newcomb's claim, and Newcomb had entered into an arrangement by which Tally was to relieve the land of his location, in consideration of $300, to be paid by Newcomb.

The records of the probate court show that Eliza Newcomb, the widow of Thomas Newcomb, administered upon his estate. She was the second wife of Thomas Newcomb, and was the mother of two children by him. The appellants are the children of his first wife.

C. A. Harper was Mrs. Newcomb's attorney. The land in controversy was appraised at $50. Mrs. Newcomb had a homestead set apart to her, to-wit, the house and lot marked No. 2 in the inventory, but described as three lots in "La Villita."

At the August term of the probate court, 1849, Mrs. Newcomb was allowed $1000 out of the proceeds of the estate of her husband for her support and that of the children for one year.

In November following the probate court made her an additional allowance of $2000 for herself and children. In January, 1850, Mrs. Newcomb again represented to the probate court the condition of the estate, and that a further sale of property was necessary to pay the allowances made to her and the children.

She charged herself with the three lots in "La Villita," the homestead, taken at the appraisment ($500), and the McKnight title marked No. 18, with a piano and some moneys collected, making a total of $866.60. She credits herself with moneys paid out $607.78, and claims yet on her allowances $2741.28.

She prayed the court to set apart to her the McKnight title and the piano, which was done at the appraisment, and other lands were ordered to be sold to pay her allowances.

On the thirteenth of January, 1850, Mrs. Newcomb reported to the probate court that she had sold the McKnight title for $200 ; that it was the best sale she could make, and asked the court to approve the sale.

On the first of February, 1850, the court entered up an order approving the sale. No further action seems to have been had in the probate court ; and Mrs. Newcomb having ceased to be a citizen, her letters were revoked in February, 1861.

Whether the sale for $200, as reported by Mrs. Newcomb and confirmed by the court, was a sham or not, it is impossible to determine with certainty, but there are some very remarkable facts connected with the whole transaction.

Mrs. Newcomb, on the eighteenth of September, 1849, conveyed the land in consideration of $50, as her separate property taken from the inventory. The deed was not acknowledged, however, until the eighteenth of January, 1850. On the same day Harper, Mrs. Newcomb's attorney, conveyed the land by quit-claim deed to J. C. Hall for $300.

It appears from the statement of facts that Tally received the greater part of the $300 which Newcomb was to give him to release his claim to the McKnight title ; that Hall was to pay Newcomb at the rate of $1.25 per acre for the land, partly in money and partly in a slave.

It is singular enough that Harper, the attorney of Mrs. Newcomb, in the main, carries out this contract with Hall. He gets the slave valued at $600 ; he pays Tally, and what becomes of the rest of the money does not appear.

There being a homestead allowed to Mrs. Newcomb,

the $2000 allowed her by the probate court was not authorized by law, nor could she, to satisfy this illegal allowance, take property out of the inventory at its appraised value. Whatever acts of hers, in pursuance of her supposed right to this money, are to be counted on as making a title to Hall, must be regarded as null and void. Hall acquired no title by these measures; he has not paid the purchase money to any one legally authorized to receive it. The interest of the heirs of Thomas Newcomb could not be set aside in this manner, nor does Hall stand in a very advantageous light before this court. He had his remedy to enforce the specific performance of his contract with Thomas Newcomb, and this he should have resorted to; nor can he be heard to dispute the title of Thomas Newcomb, as it is evident that his own possession, and right to possession, came through Thomas Newcomb.

J. C. Hall has died, pending this suit; his heir, Wm. Hall, comes in to defend.

It is contended in the brief of the appellees, that the acts of Eliza Newcomb, as the administratrix, should be affirmed by this court, if for no other reason than that the estate of her deceased husband was largely indebted to her for the allowances made by the probate court. We have seen that one of these allowances she was not by law entitled to. It is also urged that this land was community property, and that her interest should pass to Hall. It is impossible for us to gather from the statement of facts the actual truth in the premises. But Thomas Newcomb had a right to sell this property to Hall, whether community or not; and if he hold it at all, he must hold it under his contract with Thomas Newcomb, and to do so he must pay the purchase money to some person legally authorized to receive it.

We have thought it best not to attempt to reform, and

render a judgment in this case; but that the facts may be more definitely ascertained, and the case proceeded in under this opinion, the judgment is reversed and the cause remanded.

Reversed and remanded.